UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ALAN MILLS, | CASE NO. C25-0742JLR |
| Plaintiff, | ORDER |
| v. | |
| LAUREL D. CRONK MONLUX, | |
| Defendant. | |

## I.    INTRODUCTION

Before the court is *pro se* Plaintiff Alan Mills's motion to amend his complaint to join as Defendants Seattle Public Schools ("SPS"), the Washington Interscholastic Activities Association ("WIAA"), Metro League – Seattle ("Metro League"), and Michael J. Wentzel, the Director of Athletics at Ingraham High School (together, "Proposed Defendants").  (MTA (Dkt. # 95); Reply (Dkt. # 97); *see* Prop. Am. Compl. (Dkt. ## 95-1 (clean), 95-2 (redlined).)  Defendant Laurel D. Cronk Monlux opposes the motion.  (Resp. (Dkt. # 96).)  The court has reviewed the parties' submissions, the

ORDER - 1

relevant portions of the record, and the governing law.  Being fully advised, the court DENIES Mr. Mills's motion to amend.

## II.    BACKGROUND

Mr. Mills filed this lawsuit on April 21, 2025.  (Compl. (Dkt. # 1).)  In his operative complaint, he brings claims against Ms. Monlux, the head coach of his daughter's high school tennis team, for violations of the First Amendment to the United States Constitution and Article I, Section 5 of the Washington State Constitution arising from Ms. Monlux's enforcement of a policy that Mr. Mills alleges prohibits parents from "coaching" their children from the sidelines during practices and matches.  (*Id.* ¶¶ V.A.1-V.A.13 (First Amendment), V.B.1-V.B.4 (Washington Constitution).)  He seeks a declaratory judgment that Ms. Monlux's actions violated his federal and state constitutional rights to free speech; injunctive relief including orders directing Ms. Monlux to retract comments she made when enforcing the policy and requiring Ms. Monlux and SPS to implement training regarding parental and spectator speech at athletic events; nominal damages; and punitive damages.  (*Id.* ¶¶ VI.A.1- VI.D.2.)

Mr. Mills filed the parties' joint status report and discovery plan on July 8, 2025. (JSR (Dkt. # 21).)  The parties represented in that report that they did "not anticipate joining additional parties" and focused their discussion of anticipated discovery on Mr. Mills's expected need to contact and/or depose minor children who were members of his daughter's tennis team.  (*Id.* at 3, 5-7.)

ORDER - 2

On August 19, 2025, the court entered a scheduling order in which it set trial on December 14, 2026; the deadline for joinder of parties on September 16, 2025; and the deadline to file motions to amend pleadings on May 4, 2026.  (Sched. Order (Dkt. # 32).)

Mr. Mills served extensive subpoenas to produce documents on SPS and WIAA on August 20, 2025.  (*See* SPS Service Decl. (Dkt. # 40); SPS Subpoena (Dkt. # 40-1 (corrected version)); WIAA Service Decl. (Dkt. # 37); WIAA Subpoena (Dkt. # 37-1).)  He served a similarly extensive subpoena on Metro League on August 26, 2025.  (Metro League Service Decl. (Dkt. # 44); Metro League Subpoena (Dkt. # 44-1).)

On September 13, 2025, Mr. Mills moved to compel SPS to respond to his subpoena.  (SPS MTC (Dkt. # 47).)  He moved to compel Metro League to respond to his subpoena on October 15, 2025.  (Metro League MTC (Dkt. # 69).)  On November 13, 2025, the court ordered Mr. Mills to meet and confer with SPS and Metro League with the purpose of coming to an agreement on the reasonable scope of Mr. Mills's requests for production and the objections thereto, and to file joint statements regarding the results of their conferences.  (11/13/25 SPS Order (Dkt. # 82); 11/13/25 Metro League Order (Dkt. # 83).)

After SPS and Metro League each filed statements that revealed that they were unable to reach agreements with Mr. Mills on most of his requests for production, the court ordered Mr. Mills and counsel for SPS and Metro League to appear at a December 17, 2025 hearing regarding the motions to compel.  (12/8/25 Order (Dkt. # 89); *see* Draft SPS Statement (Dkt. # 86-6); Metro League Statement (Dkt. # 84); 12/17/25 Min. Entry

ORDER - 3

(Dkt. # 90).) During that hearing, the court and Mr. Mills engaged in the following colloquy:

> THE COURT: All right. You're going to have to cut me some slack here. My favorite hobby is fishing, and listening to what you just said, you're really describing a fishing expedition. You think there has to be something there, and that is not the standard I'm supposed to test it against.
>
> [][C]onsequently, I think you probably would have been better off to discuss the matters with the parties, as opposed to saying, you know, it's either everything or nothing. You're not going to get nothing, but you're not going to get everything, either. So going forward, you might want to keep that in mind.
>
> In the court's view, unless you, ultimately, join the Seattle Public Schools or the WIAA, who have actually been in this courtroom a fair amount in the connection with football-player eligibility --
>
> MR. MILLS: May I interject a question there?
>
> THE COURT: Sure.
>
> MR. MILLS: I have been considering joining them, but I thought I needed more information before they would be joined. And the question is, it looked to me, from your minute order about dates, that the last date to join would be August 2025.
>
> So the first question is, may I still join? Because I agree with you, that would make this all much easier. And the second question is, because SPS is a public entity of the State of Washington, I think there's a requirement of the State of Washington to file something and give a six-month heads-up before I join them to any court case.
>
> THE COURT: That is the ultimate irony of you choosing to proceed pro se. There is a labyrinth of rules and doctrines and, frankly, in connection with State regulations.
>
> MR. MILLS: Sure.
>
> THE COURT: Is it too late? I don't have the docket in front of me, but I'll take your word that it was last August.
>
> MR. MILLS: Yeah.
>
> THE COURT: You would need to file a motion asking me to amend your complaint --
>
> MR. MILLS: Okay.

ORDER - 4

THE COURT: -- to name the State.  I try very hard not to respond in a seat-of-the-pants manner in regards to questions that I'm asked because I want to make sure there is a written record so the people who are reviewing my homework will have something to look at --

MR. MILLS:  Sure.

THE COURT: -- but, secondly, that both sides have their chance to put forth what they think are their best arguments.

So it was an interesting decision, on your part, to sue strictly the coach. But you set out in your pleadings why you thought that was the right thing to do, and this was probably the first time that you've encountered some of the consequences or results of that decision.

So let me take up the easier of these two -- well, anything else that you'd like to say to try to persuade me, now that I've tipped my hand as to where I'm headed?

MR. MILLS:  I think the fishing expedition is a pretty good -- but I would like to make clear that I have considered adding SPS and Metro League and WIAA, from the very beginning, but I needed more information, and that's exactly what I'm trying to do right now is obtain information.

(12/17/25 Hr'g Tr. (Dkt. # 92) at 5:11-7:18.)

Mr. Mills filed his motion for leave to amend his complaint on December 22, 2025.  (MTA.)  He seeks to join the Proposed Defendants as defendants and to assert "related § 1983 claims" against them.  (*See* MTA at 2.)  The motion is fully briefed and ripe for decision.

### III.    ANALYSIS

Because the September 16, 2025 deadline for joining parties has expired, Federal Rule of Civil Procedure 16(b)(4) controls Mr. Mills's motion to amend.  Under that rule, "[a] schedule may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4); (*see also* Sched. Order at 2 (providing that the case schedule may be modified "only upon good cause shown").)  "Good cause" focuses on the diligence of the

ORDER - 5

party seeking to modify the pretrial scheduling order. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607-08 (9th Cir. 1992). To show "good cause," the party seeking the extension must show that it could not meet the deadline imposed by the scheduling order despite its diligence. *Id.* at 609.

Mr. Mills argues that he can show good cause to extend the deadline for joining parties because he "exercised diligence but could not reasonably identify or plead the full scope of institutional and supervisory liability before the deadline for joining additional parties . . . due in large part to discovery obstruction by SPS, WIAA, and Metro League." (MTA at 2.) He asserts that his proposed amended complaint "does not reflect a change in litigation strategy" but instead "reflects Mr. Mills's evolving understanding—based on discovery—of the roles played by institutional actors and supervisory officials." (*Id.* at 4.) He relies on *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d at 609, and *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002), for the proposition that "[c]ourts routinely find good cause where amendment is prompted by discovery obstruction or delayed disclosure of information controlled by opposing parties or non-parties." (MTA at 4-5.)

Mr. Mills's complaint, however, reveals that he was aware since the beginning of this case that SPS was Ms. Monlux's employer, that Mr. Wentzel was the director of athletics at his daughter's high school, and that the rules he challenges were promulgated by the WIAA and Metro League. (*See, e.g.*, Compl. at 6-7 (definitions); *id.* ¶ IV.4 (alleging Ms. Monlux is an employee of SPS); *id.* ¶¶ IV.5, 7-8, 11-13 (quoting and discussing email messages from Ms. Monlux and Mr. Mills regarding WIAA and Metro

ORDER - 6

League rules about coaching during matches); *id.* ¶ IV.9 (quoting and discussing WIAA and Metro League rules)); *id.* ¶¶ IV.17, 20 (discussing email messages to Ms. Monlux on which he copied Mr. Wentzel).)  Mr. Mills made no mention in his briefing on his motions to compel about needing information to support joining SPS and Metro League as defendants.  (*See generally* SPS MTC; SPS MTC Reply (Dkt. # 65); Metro League MTC; Metro League MTC Reply (Dkt. # 78).)  Mr. Mills also "ma[d]e clear" at the November 17, 2025 hearing that he had considered joining SPS, Metro League, and WIAA "from the very beginning" of this case, despite representing in the Joint Status Report that he did not intend to join any additional parties.  (12/17/25 Hr'g Tr. at 7:15-18.)  The court agrees with Ms. Monlux that the addition of four new Defendants would expand the complexity of this case and risk the parties' trial date.  (*See* MTA Resp. at 9.)  Under these facts, the court cannot find that Mr. Mills was sufficiently diligent to satisfy the good cause standard.

Mr. Mills cites his *pro se* status as an excuse for his failure to join the proposed defendants before the deadline.  (Reply at 10.)  *Pro se* litigants, however, are bound to follow the same rules of civil procedure that govern represented parties.  *Muñoz v. United States*, 28 F.4th 973, 978 (9th Cir. 2022) ("[I]t is axiomatic that pro se litigants, whatever their ability level, are subject to the same procedural requirements as other litigants.") (citations omitted).  Furthermore, Mr. Mills has demonstrated a sophisticated understanding of First Amendment law and the rules of procedure throughout his filings in this action.  Therefore, failing to find good cause, the court denies Mr. Mills's request

ORDER - 7

to extend the deadline to join additional parties and denies Mr. Mills's motion for leave to to amend.

### IV.   CONCLUSION

For the foregoing reasons, the court DENIES Mr. Mills's motion for leave to amend his complaint to join additional defendants (Dkt. # 95).

Dated this 10th day of February, 2026.

JAMES L. ROBART
United States District Judge

ORDER - 8